IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JEFFREY C. ROGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. _____ |
| | ) | |
| CITIGROUP GLOBAL MARKETS, INC., d/b/a | ) | JURY DEMAND |
| CITI SMITH BARNEY d/b/a SMITH BARNEY, | ) | |
| MORGAN STANLEY SMITH BARNEY, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Comes now the plaintiff, Jeffrey C. Rogers ("First Lieutenant Rogers") through counsel and for his Complaint would state:

1.     This is an action brought pursuant to the Uniformed Services Employment and Reemployment Rights Act ("USERRA").

## THE PARTIES

2.     Plaintiff, First Lieutenant Rogers is a citizen of Washington State and resides in Pierce County, Gig Harbor, Washington.

3.     Defendant, Citigroup Global Markets, Inc., d/b/a Citi Smith Barney d/b/a Smith Barney ("Citi") provides consumers, corporations, governments and institutions with a broad range of financial products and services. Citi has a place of business in Nashville, Tennessee and can be served through its registered agent, CT Corporation System located at 800 S. Gay Street, Suite 2021, Knoxville, Tennessee 37292.

4.     Morgan Stanley Smith Barney, LLC ("MSSB") provides brokerage, investment banking and asset management to corporations, governments and

individuals. MSSB maintains a place of business in Nashville, Tennessee and can be served through its registered agent, CT Corporation System located at 800 S. Gay Street, Suite 2021, Knoxville, Tennessee 37292.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 38 U.S.C. § 4323(b).

6.      Venue is proper in this district under 38 U.S.C. § 4323(c)(2) and 28 U.S.C. § 1391(b) because Citi and MSSB (collectively "Defendants" or "Smith Barney") maintain a place of business in this judicial district.

## FACTS

7.      First Lieutenant Rogers was hired at Smith Barney in February, 2008 as a Financial Advisor. He started production in the company's San Diego office in June of the same year and was earning approximately $40,000.00.

8.      First Lieutenant Rogers worked in Smith Barney's Global Wealth Management Division. His job description included generating new business, opening investment accounts and servicing existing accounts.

9.      In July, 2008, First Lieutenant Rogers enlisted in the United States Army National Guard ("National Guard") and informed Smith Barney management that he was awaiting orders to attend Basic Combat Training at Fort Benning, Georgia.

10.      In September, 2008, First Lieutenant Rogers left for Basic Combat Training. He returned from military duty in November, 2008 and returned to work.

11.      On or about February 28, 2009, First Lieutenant Rogers informed his supervisor, Michael Melton ("Melton") who served as the company's Branch Manager,

2

that he had received orders to Officer Candidate School and would be leaving for an extended period of time to perform military service.

## March 3rd

12.     On March 3, 2009, Approximately three days after First Lieutenant Rogers informed Melton that he would be leaving again to perform an extended period of military service, he was summoned to a meeting with Melton and David Reicks ("Reicks") who served as the company's Branch Compliance Officer.

13.     During the March 3rd meeting, Melton complained that First Lieutenant Rogers' production and personal commitment to the company were not meeting Smith Barney's expectations. Specifically, Melton took issue with the preceding six month time period.

14.     First Lieutenant Rogers explained to Melton that he had been in Georgia conducting military training for the two-and-a-half of the six-month period. To no avail. Melton persisted stating: "it clearly is not working out for you here and it would be in your best interest, if you want to continue to work in this industry, to resign."

15.     Melton persisted in trying to persuade First Lieutenant Rogers to resign. Melton stated that it would look better on First Lieutenant Rogers' Financial Industry Regulatory Authority (FINRA) Form U5 if he resigned as opposed to being fired. A Form U5 is used by broker-dealers to register, and terminate the registrations of associated persons within the financial community.

16.     Melton relentlessly continued to try to persuade First Lieutenant Rogers to resign threatening him that if he reported that First Lieutenant Rogers had performed

3

poorly at Smith Barney it would hinder him being able to get a job at any other brokerage firm.

17.  When First Lieutenant Rogers refused to resign, Melton told him to clean out his office.

18.  Following Melton's sudden and abrupt termination of First Lieutenant Rogers, Emilie Temporal ("Temporal"), Melton's Administrative Assistant escorted him to his office and demanded he turn over his office key and office security key card.

19.  Temporal returned a short while later to inquire as to whether First Lieutenant Rogers had completed his resignation letter.

20.  Temporal again confronted First Lieutenant Rogers and demanded his resignation letter.

21.  Temporal came to First Lieutenant Rogers' office for a third time and demanded that he provide her with his resignation. First Lieutenant Rogers informed Temporal that he was not signing a letter of resignation. Temporal stated that Melton was going to be upset and he needed to discuss the matter with him.

22.  Temporal returned to First Lieutenant Rogers' office and informed him that Melton wanted to meet with him after lunch.

23.  First Lieutenant Rogers received an email from Carol Hemker ("Hemker"), Director of Human Resources in Smith Barney's Los Angeles office stating that Smith Barney would not contest an unemployment compensation claim if he agreed to resign.

24.  First Lieutenant Rogers was summoned to a meeting with Melton who inquired as to why First Lieutenant Rogers did not sign a letter of resignation. First Lieutenant Rogers reiterated the fact that he would not resign.

4

25.     Melton told First Lieutenant Rogers to report to work at 10:00 a.m. the next day. First Lieutenant Rogers informed Melton that he intended to speak to a JAG attorney in his military unit in the morning and would report to work immediately thereafter.

## March 4th

26.     First Lieutenant Rogers arrived at Smith Barney's office on March 4, 2009, after consulting with a JAG lawyer, and encountered Melton in the elevator. Melton stated that he needed to attend an arbitration and would call him later to reschedule their meeting.

27.     First Lieutenant Rogers emailed Hemker, Robert Perry ("Perry"), Smith Barney's Los Angeles Regional Director and Douglas Kentfield ("Kentfield") Divisional Director-Western Division and informed them that he was filing a formal complaint against Melton regarding his sudden and abrupt firing yesterday.

28.     At approximately 3:00 p.m., First Lieutenant Rogers received a call from Hemker on his mobile phone who inquired as to what transpired with Melton the previous day.

29.     First Lieutenant Rogers conveyed to Hemker that a few days after he informed Melton that he would be absent from work for approximately three months to attend Officer Candidate School, Melton fired him.

## March 5th

30.     On March 5, 2009, Hemker and Melton contacted First Lieutenant Rogers to discuss his termination.  At the conclusion of the conference call, Hemker informed First Lieutenant Rogers that she would get back to him.

5

## March 6th

31.    On March 6, 2009, First Lieutenant Rogers left a voicemail for Hemker inquiring as to whether the company was going to reinstate him. On the same date, a Form U5 statement was filed by Smith Barney stating that his termination was related to: "management discretion; not related to sales practice."

## March 7th

32.    On March 7, 2009, First Lieutenant Rogers called Hemker to inquire as to whether Smith Barney was going to reinstate him and to express concern that he believed Melton's decision to terminate him was motived by his service in the military. Carol stated that she would call Melton and then get back to him regarding possibly reinstating him.

## March 9th

33.    On March 9, 2009, First Lieutenant Rogers left a voicemail for Hemker inquiring as to what his status was at Smith Barney.

## March 10th

34.    On March 10, 2009, First Lieutenant Rogers called Hemker again and requested to be reinstated. She informed him that she would discuss the matter with Melton and get back to him.

## March 15th

35.    On March 15, 2009, First Lieutenant Rogers received a letter dated March 13, 2009, denying his request to be reinstated.

36.    Smith Barney's s' harassment of First Lieutenant Rogers regarding his

6

military service is prima facie evidence that his military service was a motivating factor in its decision to terminate him.

49.    Smith Barney's harassment of First Lieutenant Rogers violated his Rights under USERRA.

50.    Smith Barney's termination of First Lieutenant Rogers was motivated, in part, by his obligations to serve in the military and caused First Lieutenant Rogers to lose pay and other benefits.

51.    Smith Barney's actions, as described above, were willful.

52.    Smith Barney's conduct was a violation of Smith Barney's company policies, including Smith Barney's espoused values.

## CLAIM FOR RELIEF

### Uniformed Service Employment and Reemployment Rights Act, 38 U.S.C. § 4301 *et seq.*

53.    First Lieutenant Rogers adopts and incorporates all of the prior allegations and averments stated before.

54.    Smith Barney violated First Lieutenant Rogers' rights under 38 USC § 4311 of USERRA, among other ways, by:

(a)    harassing him;

(b)    discriminating against him;

(c)    unlawfully terminating him because of his membership, service, or obligation to perform service in, the uniformed services, and/or because he took action to enforce a protection afforded him under USERRA or to exercise a right provided for in USERRA.

55.    Smith Barney's actions, as described above, were a violation of Smith Barney's company's policies.

7

56.     First Lieutenant Rogers' military service was a motivating factor in the adverse employment actions taken against him by Smith Barney in violation of 38 U.S.C. § 4311.

57.     First Lieutenant Rogers has lost pay and benefits as a result of Smith Barney's unlawful termination of him.

58.     Smith Barney's refusal to fully comply with USERRA is willful and deliberate.

WHEREFORE, Plaintiff Prays:

1.     That the Court find and make a declaratory judgment that Smith Barney violated First Lieutenant Rogers' USERRA rights when it: harassed him, discriminated against him, terminated him and retaliated against him for exercising his rights under USERRA.

2.     That Smith Barney be required to fully comply with the provisions of USERRA by:

(a)     Refraining from harassing First Lieutenant Rogers;

(b)     Refraining from discriminating against First Lieutenant Rogers;

(c)     Refraining from retaliating against First Lieutenant Rogers;

(d)     Reinstating First Lieutenant Rogers into a position at the level of seniority, status and pay that he would have enjoyed had Smith Barney not discriminated against him;

(e)     That First Lieutenant Rogers be paid all lost pay and benefits as a result of Smith Barney's violation of USERRA in an amount not to exceed one million five hundred thousand dollars ($1,500,000.00);

(f)     That a judgment be entered awarding First Lieutenant Rogers front pay damages.

(g)     That a judgment be entered awarding First Lieutenant Rogers liquidated

8

damages for willful violations of USERRA.

(h)

(i)     That a judgment be entered awarding First Lieutenant Rogers his attorneys' fees.

(j)     That a judgment be entered awarding First Lieutenant Rogers his litigation costs and expenses.

(k)     That a judgment be entered awarding First Lieutenant Rogers pre- and post-judgment interest on the amount of lost compensation found due.

(l)     That the Court award such general relief as First Lieutenant Rogers may Be entitled.

Dated: 16 November 2012                    Respectfully submitted,


Joe Napiltonia, #026881
Law Office of Joe Napiltonia
219 Third Avenue North
Franklin, Tennessee 37064
Telephone: (615) 734-1199
Facsimile: (615) 534-4141
joenap@navyseallawyer.com

9